IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA NADEAU, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:03-CV-2312-L |
| § | |
| MENTOR TEXAS, L.P., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Motion to Remand, filed May 9, 2005; Defendant Mentor Texas, L.P.'s Supplemental Rule 12(b)(6) Motion to Dismiss, filed November 22, 2004; and Defendant's Motion for Summary Judgment, filed January 14, 2005. After careful consideration of the motions, responses, replies, record, appendices and applicable law, the court **denies** Plaintiff's Motion to Remand; **grants** Defendant Mentor Texas, L.P.'s Supplemental Rule 12(b)(6) Motion to Dismiss;[1] and **denies as moot** Defendant's Motion for Summary Judgment.

### I. Background

Plaintiff Linda Nadeau ("Nadeau" or "Plaintiff") originally filed this suit for damages in the 14th Judicial District Court of Dallas County, Texas, on August 28, 2003, alleging claims against Defendant Mentor Texas, L.P. ("Mentor" or "Defendant") for negligence and gross negligence arising from allegedly defective breast implants manufactured by Mentor. On October 3, 2003, Mentor removed the state court action to federal court based on diversity of the parties and filed a

---

[1] As both parties have included matters outside the pleadings, and the court has not excluded these matters, the court treats Defendant's Supplemental Rule 12(b)(6) Motion to Dismiss as one for summary judgment pursuant to Fed. R. Civ. P. 56. The court determines that all parties have had adequate time to respond to this motion and conduct necessary discovery.

Memorandum Opinion and Order - Page 1

motion to dismiss the lawsuit. The court denied Mentor's motion to dismiss because Plaintiff's state court petition was silent with respect to the date when the implants were placed in Plaintiff, and the court was therefore unable to determine whether Plaintiff's claims were barred by the multidistrict *Butler* class action settlement and final judgment.[2] *See* Court's Order of June 18, 2004 at 5.

After the issuance of this order, Mentor sent written discovery to Plaintiff to ascertain the date on which the breast implant surgery on which Plaintiff based her claims took place. After it received the answers and responses to its written discovery requests, Mentor filed a supplemental motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the court treats as a motion for summary judgment.

In May 2005, Nadeau filed a motion to remand, contending that the amount in controversy "is only $70,000.00." Plaintiff's Motion to Remand at 2. Since this amount is less than the jurisdictional threshold of $75,000, Plaintiff contends that this court lacks subject matter jurisdiction. As Plaintiff's Motion to Remand questions whether this court has the power to entertain this action, the court will address such motion first, even though it was filed after the supplemental motion to dismiss was filed.

---

[2]The full caption of the *Butler* case is: *In re: Silicone Gel Breast Implant Products Liability Litigation (MDL-926)*, Master File CV 92-P-10000-S, *Francesca Butler, Alice Taylor, Glenna E. Powell, and Betty Dasher, on Behalf of Themselves and All Other[s] Similarly Situated, Plaintiffs, vs. Mentor Corporation; Mentor Polymer Technologies, Inc.; Mentor O & O Inc.; Mentor H/S Inc.; Mentor International Inc.; and Teknar Corp., Defendants,* Case No.: 93-P-11433-S. *See* Exhibit A to Defendant's Supplemental Motion to Dismiss, Order No. 14 (Order Approving Mentor Settlement and Certifying Mentor Settlement Class; Final Judgment as to Claims Against Mentor) (hereafter referred to as "Order").

**Memorandum Opinion and Order - Page 2**

## II. Plaintiff's Motion to Remand

### A. The Applicable Standard

The burden of establishing federal subject matter jurisdiction rests with the party seeking to invoke it. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995). For diversity purposes, the amount in controversy is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. *Id.* at 1253; *De Aguilar*, 47 F.3d at 1408. In a removal case, when the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that "the amount in controversy exceeds the [$75,000] jurisdictional amount." *St. Paul*, 134 F.3d at 1253. "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *De Aguilar*, 47 F.3d at 1412 (emphasis in original and footnote omitted). The test to be used by the district court is "whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount]." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). As the Fifth Circuit has stated, "[t]he district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *St. Paul*, 134 F.3d at 1253 (footnotes omitted). If a defendant fails to establish the requisite jurisdictional amount, the court must remand the case to state court.

### B. Analysis

In this case, Plaintiff's state court petition does not state the amount Plaintiff seeks in damages. Plaintiff, in her motion to remand, contends that Mentor incorrectly alleges that the amount in controversy, exclusive of interest and costs, exceeds $75,000. Plaintiff Nadeau states that the "amount in controversy is only $70,000.00; Plaintiff is seeking recovery of only $70,000.00." Plaintiff's Motion to Remand at 2. No affidavit, declaration, or other proof is submitted by Nadeau to support this statement. As the amount of damages Plaintiff seeks is not alleged in the petition, it is not "facially apparent" that the amount in controversy exceeds $75,000. The court must therefore review the evidence submitted by Mentor.

In its notice of removal, Mentor states that it reasonably believes that the amount in controversy, exclusive of interest and costs, exceeds $75,000. Mentor offers no affidavit or declaration in support of its assertion; however, it does point to the nature of damages Nadeau requested in Plaintiff's Original Petition. In the state court petition, Nadeau alleges that she suffered two deflations of a silicone breast implant within six weeks. She alleges negligence and gross negligence on Mentor's part, and seeks damages for pain and suffering, mental anguish, disfigurement, medical expenses in the past and medical expenses she reasonably expects to incur in the future. Also, it is clear from Plaintiff's pleadings that she seeks punitive damages, as she alleges that Mentor acted with malice or gross negligence toward her.

While the state court petition does not specifically allege that the amount in controversy exceeds $75,000, Nadeau has alleged two separate injuries or events; seeks damages for pain and suffering, mental anguish, disfigurement, medical expenses (past and future); and seeks punitive damages. The application of common sense necessarily reveals that if Plaintiff is successful on her

claims, she could reasonably be expected to recover more than $75,000. *See Allen*, 63 F.3d at 1336. Alternatively, given the nature of Nadeau's claims, a litigant standing in her shoes could have easily alleged in good faith that the amount of damages sought exceeded $75,000. It would be fatuous, in light of what has been pleaded and the damages sought by Plaintiff, for this court to conclude that the amount in controversy does not exceed $75,000. Indeed, this court would become the laughingstock of courts across this circuit, if not the nation, if it were to make such a conclusion under the circumstances of this case. There is no question in the court's mind that the actual amount in controversy exceeds $75,000, exclusive of interest and costs.

In sum, the court is not impressed by Plaintiff's willy-nilly statement that the "amount in controversy is only $70,000.00." She provides no methodology setting forth how she determined that the amount in controversy *just happens to be* $5,000 less than the jurisdictional threshold. Frankly, the court is baffled as to how Plaintiff can assert with a straight face, after more than nineteen months after this case was removed to federal court, that the amount in controversy is conveniently below the jurisdictional threshold. The court is persuaded that Mentor has met its burden, and Nadeau does nothing to establish that "it appears to a legal certainly that [her claims are] really for less than the jurisdictional amount to justify [remand]." *De Aguilar*, 47 F.3d at 1412 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Plaintiff's Motion to Remand is nothing more than a feeble attempt at legal legerdemain, for which the court has neither the time nor the patience to entertain. Such motions unnecessarily consume scarce judicial resources. For the reasons stated herein, the motion must be denied.

**Memorandum Opinion and Order - Page 5**

### III. Summary Judgment Standard

As the court treats the supplemental motion to dismiss as one for summary judgment, the court now sets forth the applicable standard for such motions. Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513

Memorandum Opinion and Order - Page 6

U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### A. Undisputed Facts

In its first motion to dismiss, Mentor asserted (a) that Plaintiff was surgically implanted with implants on April 29, 1993, and (b) that Plaintiff's claims were barred against Mentor and its affiliated entities by a September 1993 multidistrict class action settlement and a final judgment regarding claims related to breast implantation of saline or silicone implants prior to June 1, 1993. Because the petition did not state when Plaintiff's surgery occurred, the court was unable to conclude that Plaintiff could prove no set of facts in support of her claims.

Nadeau, according to Plaintiff's Original Petition, suffered a deflation of a silicone breast implant on August 28, 2001. This was the second deflation, as she had suffered one six weeks earlier. *See* Plaintiff's Original Petition at 3. The undisputed evidence establishes that Plaintiff had replacement surgeries for both deflations, one occurring on July 11, 2001, and one occurring on

August 28, 2001. The surgery on July 11, 2001 was performed to replace the right-sided saline filled breast implant, which was implanted into Plaintiff's body on April 29, 1993. The surgery on August 28, 2001 was performed to replace the left-sided saline filled breast implant, which also was implanted into Plaintiff's body on April 29, 1993. Nadeau also had implants done on January 8, 2003. Nadeau's petition does not make any claim or request for damages with respect to the implants made on July 11, 2001, August 28, 2001, or January 8, 2003. Her petition refers to breast implants which were allegedly defective and had been implanted prior to the July 11, 2001 and August 28, 2001 dates. Discovery establishes that Plaintiff is referring to breast implants made on April 29, 1993. Plaintiff makes no allegation in her petition regarding the implants in July and August 2001. Plaintiff never amended her state court petition to include any alleged deflations regarding the implants made in July and August 2001, or any made after these dates.

In the *Butler* case, the class

> consist[s] of all persons and entities, wherever located, who have or may have any existing or future claim (including claims for injuries not yet known or manifest) under any federal or state law – whether for damages, injunctive, declaratory, or other relief – against any of the "Mentor Defendants" based upon or involving the breast implantation before June 1, 1993, of a product containing or consisting of saline, silicone, or silicone gel, or an elastomer made of silicone.
>
> The class consist[s] of (1) all persons who have received such implants (whether or not the implant was later removed); and (2) all other persons or entities – including, but not limited to, executors, administrators, personal representatives, spouses, relatives, and "significant others" – that, because of some relationship to the recipients of a breast implant, may have an independent or derivative claim based on such implants.

Order at 2-3, ¶ 2(a). Subject to the performance of their obligations under the settlement, the Mentor Defendants are "forever released from any and all class claims . . . which any [class member] had,

**Memorandum Opinion and Order - Page 8**

has, or may have in the future against any Mentor Defendant." *Id.* at 4, ¶ 5(a). Under the settlement each class member is also "barred and permanently enjoined from" initiating any action in federal or state court regarding the class claims. *Id.* ¶ 5(b). The class claims were limited to those that were "based on or involve[d] breast implantation[s] [prior to] June 1, 1993." *Id.* at 3, ¶ 2(c). Nadeau does not deny that she is a member of the *Butler* class or that she is not covered by the settlement and final judgment in *Butler*.

### B. Analysis

A careful reading of the record establishes that the breast implants (replacements) that occurred in July and August 2001 were necessary to replace deflations of implants which were done on April 29, 1993. The two surgeries in July and August 2001 necessarily were based on or involved the deflation of breast implants implanted prior to June 1, 1993. Since Plaintiff's claims in her petition are based on or involve deflations of implants implanted prior to June 1, 1993, they are barred by the multidistrict settlement and final judgment entered in the *Butler* class action case. Accordingly, there is no genuine issue of material fact with respect to whether Plaintiff's claims are barred by *Butler*, and Mentor is entitled to judgment as a matter of law.

## IV. Miscellaneous

On January 14, 2005, Mentor filed Defendant's Motion for Summary Judgment. As the court has converted Defendant Mentor Texas, L.P.'s Supplemental Rule 12(b)(6) Motion to Dismiss to a motion for summary judgment under Fed. R. Civ. P. 56, and will grant such motion, it need not consider the summary judgment motion filed by Mentor on January 14, 2005. Such motion is moot and will be denied.

## IV. Conclusion

For the reasons stated herein, the court **denies** Plaintiff's Motion to Remand; **grants** Defendant Mentor Texas, L.P.'s Supplemental Rule 12(b)(6) Motion to Dismiss, which has been converted into a motion for summary judgment; and **denies as moot** Defendant's Motion for Summary Judgment. The court **dismisses** this action **with prejudice**. Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 1st day of July, 2005.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 10**